**PEASE & IJADI, APC**
Bryan W. Pease (State Bar. No. 239139)
3960 West Point Loma Boulevard
Suite H-2562
San Diego, CA 92110
Telephone: (619) 723-0369
bryan@peaselaw.org

**RICHMAN LAW & POLICY**
P. Renée Wicklund (State Bar No. 200588)
535 Mission Street
San Francisco, CA 94105
Telephone: (917) 327-3554
rwicklund@richmanlawpolicy.com

**FARM SANCTUARY**
Cynthia Von Schlichten (*pro hac vice* pending)
3100 Aikens Road
Watkins Glen, NY 14891
Telephone: (530) 520-1971
cvonschlichten@farmsanctuary.org

*Attorneys for Plaintiff Taylor and Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEILANI TAYLOR, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>HUMANE ANIMAL FARM CARE D/B/A CERTIFIED HUMANE and ALEXANDRE FAMILY FARM,<br><br>                    Defendants. | Case No. **'25CV554  AGS JLB**<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

1

CLASS ACTION COMPLAINT

This case seeks relief for consumers who have been misled about the meaning of the "Certified Humane" advertising on dairy products, specifically, dairy products originating from Alexandre Family Farm, as well as misled by Alexandre Family Farm's additional promises of humanely sourced products. The "Certified Humane" advertisement is intended to, and does, suggest to consumers that the dairy products come from cows who are treated in accordance with certain published standards. Defendant Alexandre Family Farm uses this "Certified Humane" advertising, and additional representations about humane sourcing, in order to increase sales of its dairy products and to be able to charge higher prices for those products. Defendant Humane Farm Animal Care publishes the standards and sells access to its "Certified Humane" logo in order to enable manufacturers to convince consumers that their animal husbandry practices conform to the standards. Both Defendants profit from this schema: Defendant Humane Farm Animal Care from the sale of its services and use of its logo, and Defendant Alexandre Family Farm from increased sales of its products at higher prices.

In reality, this certification schema is a sham. Defendant Humane Farm Animal Care does not ensure that Alexandre Family Farm or other users of its logo actually meet, or even endeavor to meet, the published standards, and Alexandre Family Farm's animal husbandry practices in fact do not meet the published standards—a fact that is known to both Humane Farm Animal Care and Alexandre Family Farm. To the contrary, Alexandre Family Farm's practices are rife with well-documented, routine, and repulsive animal cruelty not in accordance with the published standards. Yet Alexandre Family Farm continues to use, and Humane Farm Animal Care continues to allow Alexandre Family Farm to use, the logo to deceive consumers. Compounding this behavior, Alexandre Family Farm makes additional representations promising "humane" practices to consumers.

This action seeks relief for consumers who have purchased and paid the requested prices for Alexandre Family Farm products bearing the "Certified Humane" logo. These consumers have been misled to their detriment and in violation of the law.

CLASS ACTION COMPLAINT

**ALLEGATIONS OF FACT**

**I.    CERTIFIED HUMANE AND ITS LOGO SCHEMA.**

1.    Defendant Humane Farm Animal Care d/b/a Certified Humane (referred to herein as "Certified Humane") is a United States Code § 501(c)(3) nonprofit organization purporting to ensure that participants in animal agriculture meet certain standards for the care of animals. As part of this endeavor, Certified Humane sells its services to manufacturers and also the use of its "Certified Humane Raised and Handled" logo (referred to herein as the "Logo"), a prominently trademarked design that manufacturers place on their packaging and in their marketing in order to convince consumers that they adhere to certain standards of animal husbandry.[1]

2.    Certified Humane is headquartered in Middleburg, Virginia.

3.    As Certified Humane is aware, and indeed as it advertises in a survey on its website, 75 percent of consumers would choose foods that are certified as protecting animal care over products that do not claim to be certified to offer such protections.[2]

4.    Certified Humane purports to be "dedicated to improving the lives of farm animals in food production from birth through slaughter,"[3] and represents that the goal of its program is to "improve the lives of farm animals by expanding consumer awareness, driving the demand for less cruel and more responsible farming practices."[4]

5.    At the core of Certified Humane's program is its "Certified Humane Raised and Handled" logo, which it licenses to producers of animal products for marketing

---

[1] *Our Mission*, Certified Humane, https://certifiedhumane.org/ (last visited Mar. 6, 2025).

[2] *Becoming Certified Humane® is Good Business!*, Certified Humane, https://certifiedhumane.org/good-business/ (last visited Mar. 6, 2025) (describing 2004 Golin Harris consumer survey).

[3] *Overview*, Certified Humane, https://certifiedhumane.org/overview (last visited Mar. 6, 2025).

[4] *See id.*

3

CLASS ACTION COMPLAINT

purposes. The Logo is intended to convince consumers that the producer adheres to Certified Humane's certification standards (referred to herein as the "Standards").

6.      Producers can and do prominently use the Logo throughout their marketing to advertise their products as Certified Humane. The Logo appears in substantially the same form reproduced below, or similar to this image but in black and white:



7.      According to Certified Humane's website, "When you see the Certified Humane® Raised & Handled logo on a product you can be **assured** that the food products have come from operations that **meet** precise, objective standards for farm animal treatment."[5] This is not aspirational language—it is instead the language of "assur[ance]"; the website promises that products bearing the Logo **actually come** from operations that do meet Certified Humane's standards.

8.      Additionally, Certified Humane promises: "Only operations which have earned certification from HFAC may use the Certified Humane® logo."[6] Again, this is not the language of aspiration, but of certainty; "only" certified operations may bear the Logo.

---

[5] *Id.* (emphasis added).

[6] *Frequently Asked Questions*, Certified Humane, https://certifiedhumane.org/frequently-asked-questions/ (last visited Mar. 6, 2025).

CLASS ACTION COMPLAINT

9. Certified Humane's website further promises that the organization "operates transparently, publicizing all of our [their] scientific standards so the public will know exactly how animals protected by our [their] seal of approval are treated."[7]

10. These statements are intended to, and do, lead consumers to believe that a product bearing Certified Humane's Logo *actually comes* from a farm operation that meets the Standards.

11. Certified Humane recognizes the importance of its Logo in marketing to consumers: "The Certified Humane® logo enables producers to differentiate themselves in the marketplace[] and empowers consumers to 'vote with their pocketbook' and drive demand for humanely raised animal products."[8]

12. Certified Humane assures consumers that the farms it certifies are required to undergo inspections to ensure compliance with the Standards. Certified operations are inspected for compliance on an annual basis by inspectors contracted by Certified Humane to write "thorough reports" on their findings, which they submit to Certified Humane.[9]

13. Certified Humane tells consumers that its audits are conducted by third-party inspectors.[10] Because their audits are not conducted by an independent legal entity, however, Certified Humane is "second-party" certifying, not "third-party" certifying.

---

[7] *Our Standards*, Certified Humane, https://certifiedhumane.org/our-standards/ (last visited Mar. 6, 2025).

[8] *Frequently Asked Questions*, *supra* note 6.

[9] *Id.*

[10] *See, e.g.*, *Want Proof Farm Animals Are Treated Humanely?*, Certified Humane, https://certifiedhumane.org/want-proof-farm-animals-are-treated-humanely/ (last visited Mar. 4, 2025) ("Thanks to your generous support, we can hire third-party inspectors to visit farms to ensure that Certified Humane's® high standards of care are being met for the millions of cattle, pigs, chickens, laying hens, turkeys, sheep, goats, bison and dairy cows

14. Certified Humane assures consumers that a farm not in compliance with the Standards will not remain certified: "If a farm cannot or will not correct their nonconformances, or has significant nonconformances that are not correctable, HFAC will no longer continue to certify them. They are removed from the program and the logo is removed from the product."[11]

## II. ALEXANDRE FAMILY FARM, ITS USE OF THE LOGO, AND OTHER HUMANE REPRESENTATIONS.

15. Alexandre Family Farm (referred to herein as "Alexandre" or "AFF") operates farms across a large swath of California from Ferndale to Eureka.

16. Notwithstanding its "Family" name, AFF is a massive corporation, one of the largest organic dairy farms in the country; operates five dairies in Del Norte and Humboldt counties; and owns 2,000 acres of hay cropland in Modoc County.[12] AFF manages more than 9,000 head of cattle, and it has immense influence in the organic marketplace and animal-welfare-concerned marketplace.[13]

_____

in the program."). Elsewhere, Certified Humane appears to refer to inspectors as its own contractors. *See, e.g.*, *Inspector Interest Sheet,* Certified Humane, https://certifiedhumane.org/wp-content/uploads/HFAC-Inspector-Information-pq.docx.pdf (last visited Mar. 4, 2025) ("Humane Farm Animal Care contracts with qualified individuals to independently inspect Certified Humane® producers.").

[11] *Id.*

[12] Stephanie Alexandre, *Letter to USDA AMS Dairy Programs Order Formulation and Enforcement Division*, Alexandre Family Farm (Sept. 15, 2023), https://www.ams.usda.gov/sites/default/files/media/FMMO_Alexandre_DF.pdf.

[13] *Dairy Deception: Corruption and Consumer Fraud at Alexandre Family Farm*, Farm Forward (Apr. 11, 2024), https://www.farmforward.com/wp-content/uploads/2024/04/FF-Dairy-Report-FINAL.pdf. (hereinafter "Farm Forward Report")

CLASS ACTION COMPLAINT

17. AFF produces and sells a wide variety of dairy products, including milk, half and half, yogurt, sour cream, kefir, cheese, milk powder, and eggnog.[14]

18. AFF received its Certified Humane certification in early 2021.[15]

19. AFF's website represents to consumers that, "in addition to protecting the health and habitat of all living creatures on our farm," AFF "compl[ies] with the third-party Certified Humane organization's strict animal welfare standards" and has made that representation, or similar representations, since receiving the certification.[16]

20. The Certified Humane Logo is also prominently displayed on AFF's homepage, as shown in the image reproduced below:[17]



---

[14] *Products*, Alexandre Family Farm, https://alexandrefamilyfarm.com/collections (last visited Mar. 6, 2025).

[15] Annie Lowry, *The Truth About Organic Milk*, The Atlantic (Apr. 12, 2024), https://www.theatlantic.com/ideas/archive/2024/04/alexandre-farms-treatment-of-animals/677980/.

[16] *Building a Healthier Food System with Humanely-Treated Animals*, Alexandre Family Farm, https://alexandrefamilyfarm.com/pages/building-a-healthier-food-system (last visited Mar. 6, 2025).

[17] *Alexandre Family Farm*, Alexandre Family Farm, https://alexandrefamilyfarm.com/ (last visited Mar. 6, 2025).

CLASS ACTION COMPLAINT

21.    The logo on AFF's homepage does not qualify its representation as applying only to a subset of AFF's products.

22.    In the "Our Certifications" section of AFF's website, AFF links to Certified Humane's website's list of "Producers who are Certified Humane®" and the "Products Certified." Per that list, Certified Humane certifies AFF's "Grass-Fed A2/A2 Milk (4% & 6% Whole, 2% Reduced Fat, Chocolate Milk)[,] Homegrown Eggnog, Heavy Whipping Cream, Half & Half, Yogurt (Plain, Low-fat & Vanilla Bean), 100% Grass-Fed Whole & Low-fat Probiotic Kefir, Probiotic Sour Cream."[18]

23.    AFF's certified dairy products also display the Certified Humane Logo prominently on their packaging, as shown below:[19]



---

[18] *Producers who are Certified Humane*®, Certified Humane, https://certifiedhumane.org/whos-certified-2/ (last visited Mar. 6, 2025).

[19] *Products*, *supra* note 14.

CLASS ACTION COMPLAINT







CLASS ACTION COMPLAINT






24.    AFF has displayed the Logo on its products and its website continuously since obtaining permission to use it in 2021. Certified Humane, despite apparently temporarily dropping (before reinstating) AFF from its list of certified farms, has never required AFF to cease displaying the Logo, even while AFF was engaged in shocking acts of animal cruelty. Those inhumane acts are addressed in detail below.

CLASS ACTION COMPLAINT

25.    AFF compounds its consumer deception with additional representations beyond its use of the Logo. AFF dedicates an entire page of its website to its claim, presented in a large banner, that AFF is "Building a healthier food system with humanely-treated animals." AFF asserts on its website that it is motivated to "provide the healthiest environment" for the animals in its care, and claims that AFF advocates for "a more humane food system" and complies with "strict animal welfare standards." These representations, which extend even beyond use of the Logo, are intended to support AFF's promise that it intends to "Do The Right Thing at Every Turn."[20]

## III.    THE REALITY OF AFF'S PRACTICES, WHICH CERTIFIED HUMANE REPRESENTS TO CONSUMERS AS MEETING ITS PUBLISHED STANDARDS.

26.    During the period when Plaintiff Taylor and the putative class members purchased AFF products, Certified Humane and AFF both made representations with and about the Logo. Certified Humane claimed, as it still does, that the Logo "assured that the food products have come from operations that meet precise, objective standards for farm animal treatment." AFF, meanwhile, displayed the Logo on its packaging and its homepage, speaking of it in soaring language promising "humane conditions, with compassion and benevolence, free from abnormal distress, and allowed to express their natural behaviors."

27.    These representations from Certified Humane and from AFF did mask, and on information and belief do continue to mask, ongoing and widespread acts of animal abuse. During the relevant period, AFF abused and neglected its animals in ways that were utterly inconsistent with both the Standards and made a mockery of "compassion and benevolence." AFF's cruelties and failures date back to at least 2019 and continued through, at a minimum, August 2024.

---

[20] *Building a Healthier Food System with Humanely-treated Animals*, *supra* note 16.

## CLASS ACTION COMPLAINT

28.    On April 11, 2024, the organization Farm Forward released the results of a years-long investigation into AFF's animal welfare practices. Farm Forward's report compiled extensive whistleblower accounts, hundreds of videos, hundreds of photographs, and testimony and interviews.[21] Farm Forward's report was independently corroborated by a journalist from *The Atlantic*.[22]

29.    Farm    Forward    is    an    organization    that    produces    resources to inform consumers, educators, advocates, policymakers and the media about factory farming and its alternatives. Farm Forward also offers consulting to support allies in philanthropy, business, and the nonprofit sector in their efforts to create a more ethical and sustainable food system.[23]

30.    Separate from Farm Forward's work, an independent investigator ("the Investigator"), known to Plaintiffs' counsel in this action, during the same time period, confirmed the conditions faced by animals at AFF.

31.    The animals Farm Forward and the Investigator observed were being used, had been used, or were going to be used in the production of AFF products bearing the Certified Humane Logo.

32.    The work of Farm Forward and the Investigator found that AFF did not meet—and Certified Humane knew that AFF did not meet—the advertised standards of animal welfare and instead subjected the animals in AFF's care to horrific abuse.

33.    Certified Humane's Standards have specific requirements for calves, particularly when kept in hutches. Calves may be kept isolated in individual hutches only

---

[21] Farm Forward Report, *supra* note 13 at 4.

[22] Annie Lowrey, *supra* note 15.

[23] *See, e.g.*, *Mission*, Farm Forward, https://www.farmforward.com/who-we-are/mission/ (last visited Mar. 6, 2025); *see also Our Impact*, Farm Forward, https://www.farmforward.com/who-we-are/our-impact/ (last visited Mar. 6, 2025); *see also Campaigns*, Farm Forward, https://www.farmforward.com/what-we-do/campaigns/ (last visited Mar. 6, 2025).

CLASS ACTION COMPLAINT

until eight weeks of age, at which point socialization "must commence."[24] The calves must be kept clean[25] and have access "at all times" to an area in which to lay that is bedded, comfortable, dry, and sloped to provide drainage.[26] An outdoor exercise area must be provided, climate conditions permitting.[27] The hutches must be arranged so that the calves can see and hear other calves and must allow them to turn around, lie down, and rest "without hindrance."[28] Calves must also "at all times" have access to fresh water.[29] On-farm killing of healthy calves is prohibited.[30]

34.    AFF flagrantly violated these Standards. The aforementioned investigations found extensive evidence of calves left in dirty hutches and covered in filth, without any outdoor access at all, unable to see other calves, and for a month longer than Certified Humane allows. Farm Forward also documented calves that were discovered dead in their hutches.[31]

35.    In November 2022, the Investigator documented calves in filth consisting of feces, urine, and mud. This filth covered the floors, denying the calves bedding, and covered the calves themselves as well. In many hutches calves were standing in a soup of waste:

---

[24] *Humane Farm Animal Care Welfare Standards: Dairy Cattle (Edition 23)*, FW 17, pp 6 (2023), https://certifiedhumane.org/wp-content/uploads/DAIRY_CATTLE_STANDARDS.pdf ("Certified Humane Standards").

[25] *Id.* at 14.

[26] *Id.* at 19.

[27] *Id*.

[28] *Id*.

[29] *Id.* at 4.

[30] *Id.* at 18.

[31] Farm Forward Report, *supra* note 13 at 13.

13

CLASS ACTION COMPLAINT










CLASS ACTION COMPLAINT





The Investigator called these the least sanitary hutches that the Investigator had ever seen. Keeping calves in such filth is forbidden by the Standards.

36.    The Investigator witnessed many of these pools of waste rising over the calves' hooves.

37.    AFF personnel admitted to the Investigator that AFF *did not clean the hutches at all* while the calves were using them, waiting until a calf was removed to join the herd in group housing before cleaning out the hutch.

38.    These hutches did not permit the calves to see each other. Nor did they offer the calves any outdoor access at all. Both conditions directly violate the Standards, violate

California Penal Code Section 597t,[32] and counter AFF's promises of humane treatment. The investigator documented these conditions:





---

[32] A person who confines any animal without providing "an adequate exercise area" violates California Penal Code Section 597t and commits a misdemeanor offense. Filth-covered hutches with no outdoor access are in no way an adequate exercise area. *See Leider v. Lewis*, 243 Cal. App. 4th 1078, 1102 (Cal. App. 2016), *rev'd on other grounds*, 2 Cal. 5th 1121 (Cal. 2017) (stating that conditions that render an area "unsafe or unusable" for the animal—such as the ground on which the animal is kept leaving "little safe room" for exercise—violate the law). Certified Humane Standard E46(m) also requires an "outdoor exercise area," meaning that AFF violates both the law and the Standards it purports to uphold.

CLASS ACTION COMPLAINT

39.    As a result of being unable to see each other, the calves attempt to put their heads through the narrow bars of their hutches. The investigator documented a calf stuck in the bars:



40.    AFF confines calves to these filthy, isolating hutches for far longer than the Standards permit. AFF personnel admitted to the Investigator that they confine calves in the hutches for at least ***until 12 weeks of age***, far exceeding the Standards limit of 8 weeks. Indeed, the Investigator located a calf marked with a birth date indicating that she had been confined in the hutch for approximately four months—twice as long as the Standards permit.

41.    The Investigator documented AFF blowing sawdust directly into the calf hutches at face level, leaving the calves covered and matted with it. This was the result:




42.    Farm Forward obtained photographs showing the sad but obvious result of the calves' poor treatment—dead calves:[33]



[33] Farm Forward Report, *supra* note 13 at 33.

18

CLASS ACTION COMPLAINT

43.    This documented treatment of calves by AFF directly contradicts the Standards that Certified Humane and AFF tell consumers the certified products meet.

44.    Calves were far from the only abused animals at AFF. Indeed, AFF's documented mistreatment of adult cows is clearly contrary to the Standards that Certified Humane and AFF tell consumers are being met.

45.    AFF *poured salt into the eyes of cows and then glued denim patches to their eyes* in an attempt to address eye infections and cancers. This was standard operating procedure, with a whistleblower reporting that it had happened "hundreds" of times. Of course, this "treatment" is completely ineffective.[34]

46.    A cow from AFF was documented at a cattle auction after having a denim patch removed from her eye. The abused cow's eye was distended and ruptured, with its contents spilling out:



A veterinarian reviewed videos of the cow and stated that the denim patch "exacerbate[d] the problem."[35]

---

[34] *Id.* at 23.

[35] *Id.*

CLASS ACTION COMPLAINT

47.    AFF *cut off a cow's teat with a pocketknife and without any pain management.* As Farm Forward documented, a cow with mastitis was becoming difficult to milk, so a worker cut her teat off with an unsanitized pocketknife:



48.    Certified Humane Standards do not permit making up "care" for sick animals on the fly. "All efforts must be made to ensure a rapid and proper diagnosis and treatment of any sick animal."[36] "Any" sick or injured cattle "must" be "[t]reated without delay (including seeking veterinary care when needed)."[37] AFF's actions were as out of compliance with these requirements as it is possible to be, and directly contrary to AFF's promises of humane treatment.

---

[36] Certified Humane Standards, *supra* note 24 at 23.

[37] *Id.*; *cf. id.* at 29 (permitting removal of supernumerary teats using pain management only up to breeding age).

49.    AFF ***drags disabled cows across concrete and gravel by their hips with heavy machinery***. A whistleblower reported to Farm Forward that AFF used a skid loader to drag a live cow across 50 yards of concrete and gravel. When a new employee questioned the practice, a more senior employee responded that this was "the way we've always done it." The incident was reported to Blake Alexandre, an owner and manager of AFF, who took no action. The incident was documented:[38]



Farm Forward received two whistleblower accounts of nonambulatory disabled cows being dragged alive across gravel and concrete by skid loaders in separate incidents at AFF.[39]

---

[38] Farm Forward Report, *supra* note 13 at 11.

[39] *Id.*

CLASS ACTION COMPLAINT

50.    This violated AFF's promises of humane treatment, including those set forth through the Certified Humane Standards. "Appropriate equipment (e.g., sling or harness, sled, bucket of a front-end loader, floatation tank, or stone boat) must be available on the dairy to move an injured or nonambulatory animal." Regardless of the type of lifting gear used, "it must provide complete body support. Hoisting by chain or dragging is prohibited." Cruelty is expressly forbidden: "Care must be taken not to cause unnecessary pain, distress, or further physical damage to the animal." "The use of hip-lifters," specifically, is allowed "only for emergency, short-term assistance."[40] AFF was plainly out of compliance with these requirements.

51.    AFF ***dehorns fully grown cows with no pain management.*** Cows' horns are ordinarily removed as calves, before the horn buds attach to their skulls. Alexandre allowed more than 800 cows to develop for years until they had full horns. It then sawed them off through live, bloody tissue containing nerves, without any pain management. A removal was documented:[41]

---

[40] Certified Humane Standards, *supra* note 24 at 26-27.

[41] Farm Forward Report, *supra* note 13 at 12.



52.    The Standards directly forbid this. It is black-letter unacceptable to use "sawing" to dehorn a cow. Moreover, removal of horns from cows older than six months must use a combination of sedatives, local anesthesia, and anti-inflammatories, and must be done by a veterinarian. This also cannot be a routine procedure.[42] Again, AFF was operating with total disregard for the Standards and its promises of humane conduct.

53.    AFF ***ignored a down cow—a cow unable to stand up on her own—for two weeks until an employee finally shot her.*** A down cow was documented:

---

[42] Certified Humane Standards, *supra* note 24 at 29-30.

CLASS ACTION COMPLAINT



54. The Standards forbid this too. "All non-ambulatory animals must be promptly treated or euthanized"; if the prognosis for recovery is poor, euthanasia must occur "early"[44]—not after leaving a cow on the ground for weeks.

55. AFF *routinely provides no veterinary or hoof care management*.[45] This violates the Standards, since any sick animal must be "treated without delay"[46] and producers must "demonstrate methods for prevention of acute hoof conditions" and include preventative hoof care in their Animal Care Plan.[47]

---

[43] Farm Forward Report, *supra* note 13 at 13.

[44] Certified Humane Standards, *supra* note 24 at 26 (noting that "where the prognosis for recovery of a non-ambulatory animal is poor, early intervention by euthanizing the animal on farm must be undertaken").

[45] Farm Forward Report, *supra* note 13 at 15.

[46] Certified Humane Standards, *supra* note 24 at 28.

[47] *Id.* at 27.

CLASS ACTION COMPLAINT

56.    AFF *routinely transports sick, injured, and/or lame cows.*[48] This violates the Standards as well. A sick or injured but ambulatory animal may only be transported for veterinary care, for immediate humane slaughter, or if the animal is capable of loading, traveling, and unloading while walking unassisted.[49] A sick or injured non-ambulatory cow cannot be transported at all unless it is for veterinary care.[50]

57.    In sum, again and again and again AFF engaged in cruelty far outside of what Certified Humane's Standards are supposed to allow. AFF nevertheless continued not only using the Certified Humane Logo but asserting that its use of the Logo showed that AFF stood for "compassion and benevolence."

58.    AFF compounded its misleading use of the Logo by making its own separate promises of humane treatment, such as "provid[ing] the healthiest environment" for the animals in its care and advocating for "a more humane food system."

**IV.    CERTIFIED HUMANE'S KNOWLEDGE OF AFF'S PRACTICES AND FAILURE TO ENFORCE THE STANDARDS IT PROMOTES TO CONSUMERS.**

59.    While AFF brutalized and neglected the animals in its care, Certified Humane continued to allow AFF to use the Logo on its website and its products, representing to Plaintiff Taylor and other consumers that AFF's animal care practices met the Standards. This consumer deception persisted for years.

60.    Even when AFF's cruelty became national news[51], Certified Humane did not require AFF to remove the Logo from AFF products or its website. Nor did Certified Humane change its own representations about what use of the Logo realistically guarantees to consumers.

---

[48] Farm Forward Report, *supra* note 13 at 15.

[49] Certified Humane Standards at 33.

[50] *Id.* at 26.

[51] *See* Annie Lowrey, *supra* note 15.

CLASS ACTION COMPLAINT

61.    Based on its own representations, Certified Humane was certainly aware of the conditions at AFF in the years leading up to Farm Forward's report. Certified Humane asserts that it inspects certified facilities, and any real audit could not have failed to uncover AFF's abusive treatment of its animals.

62.    Nevertheless, despite AFF's conduct occurring for years, Certified Humane took no action to remove AFF from its certification program or to prevent AFF from using the Logo on its products or website.

63.    Eventually, Certified Humane apparently delisted AFF from its online list of "Producers who are Certified Humane." Comparisons of Certified Humane's website five weeks before and two-to-three weeks after the publication of Farm Forward's report reveal that AFF was removed from the online list. The delisting occurred with no announcement from Certified Humane, hence the exact date of removal is uncertain.[52]

64.    On information and belief, however, ***even at that point*** Certified Humane did ***not*** require AFF to cease using the Logo to mislead consumers. And indeed, AFF used the Logo continuously through the Class Period, *see supra* ¶ 24, to deceive consumers such as Plaintiff. Moreover, by removing AFF from the online list of certified entities silently, Certified Humane hid from consumers the change in AFF's status.

65.    Certified Humane did not alter its promises to consumers either, despite failing to keep them. Certified Humane continued to represent that its Logo "assured" the Standards were followed, and that "the public will know exactly how animals protected by our seal of approval are treated."

66.    AFF's documented conduct shows Certified Humane's representations to be false and/or misleading. A veritable festival of cruelty occurred at AFF for years, right under Certified Humane's nose, which Certified Humane was unable or unwilling to stop.

---

[52] *Timeline of Alexandre Dairy Investigation*, Farm Forward, https://www.farmforward.com/news/timeline-of-alexandre-dairy-investigation/ (last visited Mar. 6, 2025).

CLASS ACTION COMPLAINT

67.    Certified Humane's statements that its Logo represents a guarantee are simply false.

68.    Certified Humane promises that "[o]nly" certified producers are allowed to use the Logo. This is also untrue. When Certified Humane quietly removed AFF from its approved producers, on information and belief it took no action to prevent AFF from continuing to use that Logo on its website and products, the most direct forms of communication with consumers.

69.    Certified Humane's false representations about the meaning of its Logo, and Certified Humane's allowing AFF to use the Logo, were deceptive to consumers such as Plaintiff Taylor, who reasonably but erroneously believed they could trust Certified Humane's word.

## PARTIES, JURISDICTION, AND VENUE

70.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act ("CAFA"). There are more than 100 members in the proposed class.

71.    Plaintiff Leilani Taylor is a citizen of San Diego, California and consents to this Court's jurisdiction.

72.    At all times herein, Plaintiff Taylor was and is an individual consumer over the age of 18.

73.    Defendant Humane Farm Animal Care d/b/a Certified Humane (referred to herein as "Certified Humane") is a United States Code § 501(c)(3) nonprofit organization headquartered in Middleburg, Virginia.

74.    Through its purported auditing and certification schema, including its work with Defendant AFF, Certified Humane is subject to the jurisdiction of this Court, consistent with California Code of Civil Procedure section 410.10.

75.    Defendant Alexandre Family Farm is a limited liability corporation incorporated in California and with its principal address at 8371 Lower Lake Road, Crescent City, California.

76.    The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

77.    This Court has personal jurisdiction over Defendants in that they regularly conduct and transact business in California, purposefully avail themselves of the laws of California, and have marketed the Logo and products bearing the Logo to consumers in California.

78.    Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct occurred within this District, including the dissemination of false and misleading marketing and advertising regarding the nature of the Logo and its meaning for certified AFF products.

79.    Plaintiff Taylor purchased AFF's Half and Half and Eggnog products at Jimbo's, 12841 El Camino Real, San Diego, CA 920130 between 2018 and 2024, buying approximately three pint-sized bottles total per month. Plaintiff Taylor purchased these AFF products bearing the Logo in a typical setting for individual use.

80.    When she purchased the AFF products, Plaintiff Taylor saw and relied upon the Logo.

81.    Absent the use of the Logo, Plaintiff Taylor would not have paid as much for the products and likely would have chosen other products that represented more humane treatment of animals used for food.

82.    Plaintiff Taylor consumes dairy products regularly, cares about the welfare of farmed animals, and would like to be able to purchase products, including AFF products, that comport with Certified Humane's standards. If Plaintiff Taylor had a way to be certain that AFF is truly complying with Certified Humane's standards, and that Certified Humane is truly ensuring such compliance, she would consider purchasing AFF products again. Absent relief from the Court, however, Plaintiff Taylor has no way to know whether AFF and Certified Humane are meeting their promises to consumers.

CLASS ACTION COMPLAINT

## CLASS ALLEGATIONS

83.    Plaintiff Taylor re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

84.    Plaintiff Taylor brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals within the United States (the "Class"), defined as follows: all consumers who purchased Alexandre Family Farm products bearing the Certified Humane Logo within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

85.    Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Alexandre Family Farm products bearing the Certified Humane Logo in California during the Class Period (the "California Subclass").

86.    Excluded from the Class are (1) Defendants, any entity or division in which either Defendant has a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

87.    There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)    Whether Defendants are responsible for the marketing at issue;

(b)    Whether the marketing of the Alexandre Family Farm products bearing the Certified Humane Logo was unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

(c)    Whether AFF engaged in unfair, misleading, false, deceptive, fraudulent, and/or unlawful conduct with its promises about the meaning of the Logo in regard to its products bearing the Logo;

CLASS ACTION COMPLAINT

(d) Whether AFF engaged in unfair, misleading, false, deceptive, fraudulent, and/or unlawful conduct when it marketed products bearing the Logo;

(e) Whether Certified Humane engaged in unfair, misleading, false, deceptive, fraudulent, and/or unlawful conduct with its promises about the meaning of the Logo;

(f) Whether Certified Humane engaged in unfair, misleading, false, deceptive, fraudulent, and/or unlawful conduct in allowing AFF to market products bearing the Logo;

(g) Whether the use of the Logo and the accompanying representations about the meaning of the Logo created a warranty regarding the treatment of the animals used in production of the AFF products bearing the Logo;

(h) Whether consumers reasonably would have believed that the use of the Logo on the AFF products meant that the animals used in the production of those products were treated in accordance with Certified Humane's published Standards; and

(i) Whether Defendants' conduct injured Plaintiff Taylor and Class Members.

88. Plaintiff Taylor's claims are typical of the claims of the Class. Plaintiff Taylor is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Defendants' conduct and are owed the same relief, as alleged in this Complaint.

89. The precise number of the Class members and their identities are unknown to Plaintiff Taylor at this time but may be reasonably determined through discovery.

90. Plaintiff Taylor will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Taylor will vigorously pursue the claims of the Class and Subclass.

CLASS ACTION COMPLAINT

91.    Plaintiff Taylor has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Taylor's counsel have successfully represented plaintiffs in complex class actions and currently represent plaintiffs in similar complex class action lawsuits involving false advertising.

92.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Taylor and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

93.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually, and the disposition of this case and as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trying Plaintiff Taylor's and the Class Members' claims together is manageable.

94.    No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

95.    The prerequisites to maintaining a class action for equitable relief are met.

96.    By affixing the Logo to its products, and by making representations about what that Logo means for the treatment of the animals used in the production of the products, Defendant AFF acted or refused to act on grounds generally applicable to the Class, making appropriate relief with respect to the Class as a whole.

97.    By allowing the use of the Logo by AFF, and by making representations about what that Logo means for the treatment of the animals used in the production of the products bearing the Logo, Defendant Certified Humane acted or refused to act on grounds

generally applicable to the Class, making appropriate relief with respect to the Class as a whole.

98.   The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for AFF and Certified Humane. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

99.   Plaintiff Taylor knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

CAUSES OF ACTION

## COUNT I

**Unfair and Deceptive Acts and Practices
in Violation of the California Consumer Legal Remedies Act
(On Behalf of the California Subclass)**

100.   Plaintiff Taylor incorporates by reference and realleges herein all paragraphs alleged above.

101.   This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

102.   Plaintiff Taylor and other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought AFF's products bearing the Certified Humane Logo for personal, family, or household purposes.

103.   Plaintiff Taylor, the other members of the California Subclass, and Defendants have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

104.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and

the conduct was undertaken by Defendants in transactions intended to result in, and that did result in, the sale of goods to consumers.

105.   As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Taylor and the other members of the California Subclass that the use of the Logo on the AFF products means that the treatment of animals used in production of those products met the Standards, and by representing that AFF provides humane treatment to animals in its care.

106.   As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

107.   CLRA § 1782 NOTICE. On February 14, 2025, a CLRA demand letter was sent on behalf of Plaintiff Taylor to Alexandre Family Farm via certified mail, which provided notice of Defendants' violation of the CLRA and demanded that within thirty (30) days from that date, AFF correct or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if AFF refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. AFF received the letter on behalf of Plaintiff Taylor on February 14, 2025 but has failed to comply with the letter. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Taylor, on behalf of herself and the California Subclass, seeks compensatory damages, punitive damages, injunctive relief, and restitution of any ill-gotten gains due to AFF's acts and practices.

108.   CLRA § 1782 NOTICE. On February 14, 2025, a CLRA demand letter was sent on behalf of Plaintiff Taylor to Certified Humane via certified mail, which provided notice of Defendants' violation of the CLRA and demanded that within thirty (30) days from that date, Certified Humane correct or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Certified Humane refused to do so, a complaint seeking damages in accordance with the CLRA would be filed. Certified Humane received the letter on behalf of Plaintiff Taylor on February 14, 2025 and sent a response on March 5, 2025 but has failed to comply with the

CLASS ACTION COMPLAINT

letter. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Taylor, on behalf of herself and the California Subclass, seeks compensatory damages, punitive damages, injunctive relief, and restitution of any ill-gotten gains due to Certified Humane's acts and practices.

## COUNT II

### Violations of California's False Advertising Law
### (On Behalf of the California Subclass)

109.    Plaintiff Taylor incorporates by reference and realleges herein all paragraphs alleged above.

110.    As alleged more fully above, Defendants have falsely advertised the Logo and falsely advertised the AFF products bearing the Logo.

111.    At all material times, Defendants engaged in a scheme of offering the AFF products bearing the Logo for sale to Plaintiff Taylor and the other members of the California Subclass.

112.    At all material times, Certified Humane engaged in a scheme of advertising the Logo, including making advertising promises via its website and elsewhere, as a material component of products for sale to Plaintiff Taylor and the other members of the California Subclass.

113.    At all material times, AFF advertised its products bearing the Logo, including making advertising promises via its website and elsewhere, for sale to Plaintiff Taylor and the other members of the California Subclass.

114.    The use of the Logo on AFF products and Defendants' concealment of AFF's actual practices relating to the treatment of animals used in making the products, as detailed above, constitute false and misleading advertising, and therefore constitute a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.

115.   AFF's additional promises of humane treatment of the animals in its care, as detailed above, constitute false and misleading advertising, and therefore constitute a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.

116.   Said advertisements and inducements were made within the State of California and come within the definition of advertising contained in the FAL, in that such promotional materials were intended as inducements to purchase the AFF products and other products bearing the Logo and are statements disseminated by Defendants to, and intended to reach, Plaintiff Taylor and the other members of the California Subclass. Defendants knew, or in the exercise of reasonable care should have known, that this advertising was and is misleading and deceptive.

117.   The above-described acts of Defendants did deceive and were likely to deceive reasonable consumers, including Plaintiff Taylor and the other members of the California Subclass, by obfuscating the nature and sourcing of the AFF products bearing the Logo, and by misrepresenting the meaning and assurances of the Logo, in violation of the "misleading" prong of the FAL.

118.   Plaintiff Taylor and the other members of the California Subclass have suffered injury-in-fact and have lost money or property as a result of Defendants' violations of California's False Advertising Law, California Business and Professions Code §§ 17500 *et seq.*

119.   Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff Taylor and the Class seek an order of this Court that includes, but is not limited to, requiring Defendants to provide restitution to Plaintiff Taylor and the other members of the California Subclass; to cease their unlawful and deceptive acts; and pay the attorney fees and costs of Plaintiff Taylor and the California Subclass.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# COUNT III

## Violation of California's Unfair Competition Law
### (On Behalf of the California Subclass)

120.   Plaintiff Taylor incorporates by reference and realleges herein all paragraphs alleged above.

121.   By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

122.   Defendants have violated the UCL's proscription against engaging in *unlawful* conduct as a result of violations, as alleged above, of the CLRA (Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9)) and the FAL (Cal. Bus. & Prof. Code §§ 17500 *et seq.*).

123.   Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

124.   As more fully described above, Defendants' misleading marketing and advertising of the Logo and the AFF products bearing the Logo was likely to deceive reasonable consumers. Indeed, Plaintiff Taylor and the other members of the California Subclass were deceived regarding the qualities of the AFF products bearing the Logo, because Defendants' marketing and advertising misrepresent or omit the true facts concerning the treatment of the animals used in production of the products. Those acts are fraudulent business practices.

125.   Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

126.   Plaintiff Taylor and the other members of the California Subclass suffered injury by virtue of buying the AFF products bearing the Logo that they would not have

purchased, or would not have paid the requested prices for, absent Defendants' unlawful, fraudulent, and unfair marketing and advertising.

127.   There is no benefit to consumers or competition from deceptively marketing the Logo or the AFF products bearing the Logo, which purport to be made with milk from cows treated and handled according to the Standards and even with "compassion and benevolence," when these unqualified promises are false.

128.   Plaintiff Taylor and the other members of the California Subclass had no way of reasonably knowing that the AFF products bearing the Logo that they purchased were not as marketed or advertised. Thus, they could not have reasonably avoided the injury each of them suffered.

129.   The consequences of Defendants' conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available lawful alternatives that exist in the marketplace, and such conduct is immoral, unethical, and unscrupulous, offends established public policy, and is substantially injurious to Plaintiff Taylor and the other members of the California Subclass.

130.   Pursuant to California Business and Professional Code § 17203, Plaintiff Taylor and the members of the California Subclass seek an order of this Court that, *inter alia*, requires Defendants to provide restitution to Plaintiff Taylor and the other members of the California Subclass; disgorge all revenues obtained as a result of violations of the UCL; cease their unlawful and deceptive acts; and pay the attorneys' fees and costs of Plaintiff Taylor and the California Subclass.

## **COUNT IV**

### **Breach of Express Warranty**
### **(On Behalf of the Class)**

131.   Plaintiff Taylor realleges and reincorporates by reference all paragraphs alleged above.

132.    Plaintiff Taylor and Class Members formed a contract with Defendants at the time Plaintiff Taylor and Class Members purchased AFF products bearing Certified Humane's Logo.

133.    The terms of the contract include the promises and affirmations of fact made by Defendants through marketing and advertising the Logo and the AFF products bearing that Logo, as described above.

134.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Defendants and Plaintiff Taylor and Class Members.

135.    As set forth above, Defendants purport through advertising and marketing to create an express warranty that the Logo means that the AFF products bearing that Logo are made with milk from cows treated in accordance with Certified Humane's Standards, without qualification.

136.    Plaintiff Taylor and Class Members performed all conditions precedent to Defendants' liability under this contract when they purchased the AFF products bearing that Logo.

137.    Defendants breached the Logo's express warranty because despite their promises that the AFF products bearing that Logo are made with milk from cows treated in accordance with Certified Humane's Standards, in fact AFF engaged in egregious mistreatment of animals within its care, wildly divergent from the Standards, and Certified Humane was aware of this mistreatment and deviation. Thus, the Logo and the AFF products bearing the Logo do not conform to the warranty, *i.e.*, animas treated according to the Standards, and did not conform to the warranty at the time they were purchased.

138.    Plaintiff Taylor and the Class Members would not have purchased the AFF products bearing the Logo, or would have paid less for or not purchased as many of them, had they known the true meaning of the Logo or the true nature of the AFF products bearing the Logo.

CLASS ACTION COMPLAINT

139.   As a result of Defendants' breach of warranty, Plaintiff Taylor and each Class Member suffered and continues to suffer financial damage and injury, and is entitled to all damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Taylor respectfully requests that the Court enter judgment in her favor and in favor of the California Subclass and the Class as follows:

A.   An order certifying the proposed Class (and/or Subclass as deemed necessary); appointing Plaintiff Taylor as representative of the Class (and/or Subclass as deemed necessary); and appointing Plaintiff Taylor's undersigned counsel as class counsel for the Class (and/or Subclass as deemed necessary);

B.   A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.   Monetary damages for members of the Class pursuant to California Civil Code § 1780;

D.   Monetary damages and statutory damages in the maximum amount provided by law;

E.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

F.   Restitution for members of the Class, including restitutionary disgorgement;

G.   An order enjoining Defendants' conduct found to be in violation of the law;

H.   An order awarding Plaintiff Taylor and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

I.   Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff Taylor hereby demands a trial by jury.

DATED: March 7, 2025            Respectfully submitted,

                               **PEASE & IJADI, APC**


                               */s/ Bryan W. Pease*
                               Bryan W. Pease (State Bar. No. 239139)
                               3960 West Point Loma Boulevard
                               Suite H-2562
                               San Diego, CA 92110
                               Telephone: (619) 723-0369
                               bryan@peaselaw.org

                               **RICHMAN LAW & POLICY**
                               P. Renée Wicklund (State Bar No. 200588)
                               535 Mission Street
                               San Francisco, CA 94105
                               Telephone: (917) 327-3554
                               rwicklund@richmanlawpolicy.com

                               **FARM SANCTUARY**
                               Cynthia Von Schlichten (*pro hac vice* pending)
                               3100 Aikens Road
                               Watkins Glen, NY 14891
                               Telephone: (530) 520-1971
                               cvonschlichten@farmsanctuary.org

                               *Attorneys for Plaintiff Taylor and Proposed Class*

CLASS ACTION COMPLAINT